Here we are. I think we have everybody now. Our second case for this morning is Paul Rennaker against Commissioner Andrew Saul, Commissioner of Social Security, number 21042. And Mr. Forbes, I believe you are the first one up. Thank you, Your Honor. My name is Randall Forbes. I represent the Disability Claimant. And essentially, this is an unrepresented claimant case. And in several different contexts, Appelon asserts that the special duty to the unrepresented claimant was not fulfilled, particularly in relation to the Step 5 issues and the national numbers. Just to start off with, when a V.E. testifies that his testimony is consistent with the DOT, all he is asserting is that his classification of the jobs were correct. He's not making any assertion about the national numbers because the Dictionary of Occupational Titles does not deal with national numbers. So essentially, this ALJ did not probe deep enough into the national numbers and how they were arrived. And you'll notice that there's no finding describing the methodology. Nor is there a finding, obviously, that any methodology yields reliable numbers. Nor is there a finding that the numbers are reliable. So, Mr. Forbes, I'm trying to think of cases with unrepresented claimants for disability where the depth of probing that you're calling for has happened. I mean, we know that Social Security cases, and particularly the use of vocational experts, isn't done, say, the way Rule 702 would be done in a regular court proceeding. There's, it's a more informal process, I guess I'll say. So, I'm not sure where you're getting that strong a duty on the part of the ALJ to essentially take over as if the ALJ were the claimant's attorney. Well, I believe that the duty is shaped by the case law that has developed over the last couple of years in the Seventh Circuit. And in particular, the Chavez case or the Alora case. And I think it's also shaped by the Supreme Court's case in Feastick. If the standard is that the ALJ must scrupulously explore for relevant facts and that the unrepresented claimant is not to be prejudiced for the lack of counsel, then I think there needs to be more than, all that was done here is, what are the numbers? There is nothing behind the basis of these numbers. I've litigated as many of these cases probably as anybody in recent years. I can't even reverse engineer these numbers to come up with a rational basis for them. There's nothing there for the court to review. And the judges know that there are methodological problems. Everybody knows there are, unless the only areas where there are not methodological problems is if there is one DOT title per SOC code, or if they do a bottom-up survey that has a reliable sampling in order to get at a greater number. If the ALJ knows that, and he has to know that because the courts know that, the agency knows it, then essentially the administrative law judge is engaging in gotcha. We do, at a minimum, have this vocational expert's CV in the record, right? We know that this is a person who has some expertise in this area. I would, well, and then there's, and that's another part of this, but VEs have expertise in classification of jobs for the, before the dictionary of occupational title, and that classification process is informed by their experience in placing people in jobs. They're not necessarily equipped to extrapolate national numbers from samplings, either small samplings to large samplings, or large samplings to small samplings. And unless the ALJ has got into the VEs statistical background in graduate school or undergraduate, there's no foundation for even knowing that the VE has that basis behind them. But to me, the judge owed this claimant at least a minimum, and that is that he ought, he should have at least asked the question, what's the methodology? And let the VE explain. And, and there's- that there is a rule somewhere that that needs to be asked, no matter what. Well, I think any attorney that doesn't ask that question, given the present state of the case law, is probably bordering on not doing his duty. I won't use the M word, but, and assuming that there are very few methodologies that lead, that have reliable results, and that's a pretty reliable assumption given the case law, then I think they ought to at least ask it. And I probably wouldn't have even brought this argument before you, but I can't reverse engineer these numbers to come up with any reliable, reliable methodology. And do you think that the vocational expert was wrong? Do you think that the conclusion, I understand you're saying you can't reverse engineer the numbers, but are you saying he was wrong about how many jobs would be available for someone with your client's RFC? I don't know. And that's, that's the point. They have the burden of going forward. They have not the disability claimant. And, and I don't think they've met that burden. And the judge doesn't even go out on, on a limb and say they're reliable. The judge just ignores that issue. The Chavez case indicates that there needs to be an empirical footing. And, and, and when it talks about substantial evidence, there's no empirical footing here other than just numbers. And, and if, if you're to scrupulously explore for relevant facts, there ought to at least be something said about the methodology and how the numbers were arrived at. So, you know. Okay, well, if you would like to take a break at this point and save the rest for rebuttal. Yes, thank you. A good moment to do that. Okay, thank you. Mr. Montenegro. Yes, thank you, Your Honor. My name is Leo Montenegro, appearing for the defendant, Appali, the Commissioner of Social Security. I just want to say, please let me know if there's any problem with the audio, with hearing me. Mr. Reniker essentially argues that there's something wrong with the vocational expert's testimony and that the ALJ was obliged to Mr. Reniker argues, argues that the ALJ was obliged to do this questioning for him because he was unrepresentative to hearing. Now, first things first, the vocational expert's testimony constituted substantial evidence. When the, when the ALJ was considering whether Mr. Reniker could do other work, it was the ALJ's, the Commissioner's burden to produce such evidence, and the ALJ carried it out by obtaining testimony from a vocational expert. Could I ask you though, Mr. Montenegro, I'm looking at, as they often do, I mean, this vocational expert singles out a few jobs, food order clerk, charge account clerk, polishing machine operator, and this is a step five case, so the burden is on the Commissioner. So how, looking at this, are we supposed to know whether there are really 34,000 jobs as charge account clerk available in the national economy or whether that's something that was true in 1998 and there just aren't any such thing anymore? There are five jobs left because computers have taken it all over. How do we, how do we work with that? Well, first thing, Your Honor, the ALJ met the burden of producing evidence and as to whether that evidence is sufficient is a question of substantial evidence. Well, the ALJ produces the vocational expert, but I guess Mr. Forbes' point is, has the government, has the Commissioner, in a formal sense, actually produced evidence that there are a substantial enough number of jobs in the national economy for a person with Mr. Reniker's residual functional capacity to be charged? If there are still charge account clerk jobs and there are 34,000 of them, then my recollection of the law in this area is, yes, that's enough, but some jobs disappear over time. There are not many quill pen manufacturers left, and frankly, there are not many people who did old-fashioned bookkeeping if it's all done by turbo tax and that sort of thing. So how do we know where the vocational expert came up with this number? Your Honor, the Commissioner relies heavily in these situations on the expertise of the vocational experts. That's described in the regulations at 20 CFR 404-1566 and 416-966 that provide that a vocational expert is a source of vocational information, and the Commissioner's policies add to that in the Social Security rulings. I think my opposing counsel referred to indirectly Social Security ruling 004-P earlier that the vocational experts are used to address, also used to address complex vocational situations. So as to the existence and numbers of jobs, the Commissioner's relying on the expertise as stated in the regulations and policies as provided in the vocational experts resume in this case, and that's been upheld in the past as I pointed out in my brief. As to whether there were any problems with the numbers themselves, or I guess the existence of the jobs as well, for the purposes in this case of showing that Mr. Renneker was somehow prejudiced by his lack of counsel, I have to point out that despite his present disagreement with the vocational experts testimony, he hasn't offered any argument with supporting evidence to show that the vocational experts testimony was somehow wrong, that there was some deficiency with it, that the ALJ should have recognized that there was a problem there that might have caused the ALJ to question the vocational expert further, let alone creating an obligation for the vocational, for the ALJ to question the vocational expert. There just isn't any evidence of prejudice, or at least any evidence that the vocational experts opinion, opinion was somehow wrong. The vocational experts testimony and the jobs that you just recounted, your honor, I would submit those aren't obscure or odd jobs. A food order clerk, as described in the dictionary of occupational titles, that that job obviously still exists, relating with customers passing on food orders and advising customers. A charge account clerk, although I don't know that people still use the term charge account, the description is essentially one of a credit card clerk who might process applications and exchange credit information. You see, that's what worries me because I think a lot of that does really get done electronically, and what I'm in principle worried about is how are we to know the difference between a vocational expert that just with no particular basis thinks that there are 34,000 charge account clerk jobs out there, because maybe there were in the year 1998, which is actually substantially after the DOT was last revised, and maybe there are only 3,400 jobs left. Is that enough? Is it not enough? We would need to think about that. Your honor, again, the commission relies heavily on the expertise of vocational experts. There's no reason to, in the record, to doubt those numbers or to think that they were derived from old information, while the dictionary of occupational titles... Are you effectively saying that it's okay for the ALJ to simply say, for the vocational expert rather, to say to the ALJ, just trust me, trust me, I know that there are this number of numbers without backing it up? Yes, your honor, if the vocational, if the ALJ had any questions for the vocational expert, if there were anything, if the ALJ perceived anything odd or wrong, then the ALJ could have asked those questions, but didn't feel the need to. Again, the vocational expert's expertise is respected, and again, Mr. Reneker hasn't shown a problem with those numbers or the existence of those jobs. There's no reason in the record to question those numbers other than Mr. Reneker's own arguments, which are speculative. But if he did so only on appeal, you would say it was too late, and it's a little hard for me to see how, without the ability to cross-examine meaningfully, you know, Mr. Reneker is a layperson. He doesn't know how many charge account clerk jobs there are in the economy. What's he supposed to do? Your honor, I submit that if Mr., if unrepresented Mr. Reneker had a problem or a question about those numbers, he could have asked. He could have asked where that information came from. He could have asked just as well with the medical evidence, where the medical evidence came from, or what that was based on, although I don't know that there is often questions about that. It's usually evidence of those usually matters of conflict. And again, if there were problems with the vocational information provided by the vocational expert, Mr. Reneker could have raised those questions, could have raised those issues. It sounds like a boilerplate question, doesn't it, to you? It sounds like whatever the vocational expert says, it's your view that a person should automatically just say, please explain where you got those numbers from. Just as a routine matter. I don't know. It might seem like a boilerplate question, but it's really, the commissioner considers these cases as highly individualized. So if Mr. Reneker had a question, he could have asked it. He was asked by the ALJ at the end of the hearing whether he had any questions, and he didn't have any. And again, if there really were a problem with the vocational information provided by the vocational expert, we haven't seen any or hasn't submitted any evidence. Again, his argument is based on his own speculation and assumption that the vocational expert lied. I think he used the phrase mere fabrication. Or just ballparked it with no basis. That strikes me as kind of a difference, not necessarily a malicious lie, but just sort of pulled the number out of the air. Well, I don't think there was any suggestion. I don't think anyone implied that there was any basis for it. And the vocational expert's expertise itself, I would submit, provides the basis for those numbers. And if there's, those numbers aren't, I should point out, they, I don't think anyone's intimating or pretending that they are exact numbers, that the vocational expert has gone around and actually counted those jobs, that there are numbers that are that up to date. Normal government statistics, I imagine, aren't calculated at that basis. So the vocational expert, I believe, said that these were estimates, that these were example jobs, as he characterized them, and that the numbers themselves were estimates. And I think that says something in and of itself, that there was a basis for them, but that they're not as exact as, well, that they're estimates, as one might expect. And that those numbers in and of themselves are substantial, as found by the ALJ, and that the vocational expert's testimony in the end constitutes substantial evidence. I see that I'm out of time, Your Honor. If there are no additional questions, I'll submit. All right. I see none. So thank you very much. Mr. Forbes, you have a minute and 35 seconds. Thank you, Your Honor. I'm not going to get into my other three arguments, because they relate basically to the main argument. But even on the daily activities, if you read the brief and the questions that should have been asked that weren't, there's a real problem there. But I just will restate it, just because it's good to hear it. The ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. Now, a basic questioning as to how the numbers got there, I think, is an elementary set of relevant facts. Was it done by a survey of a smaller population to a larger population? Some lay people can figure that out once they hear that. Or was it done by a division of a standard occupational classification code? Was it equal distribution? Was it some other form of allocation? Whatever. If we're just going to accept gut feelings of vocational experts, or if we're just going to trust them, or we're going to let them ballpark it, then there's no way to cross and there's no way to meaningfully review the numbers. And that's... Mr. Forbes, it's obvious part of the problem was he kept insisting to be unrepresented. Perhaps if you were there, etc., you could have done a lot of those things. But the court kept warning him, you're unrepresented. But he said he continued to be that way. And that's exactly right. That's what happened. But the law says what has to happen, because it's not an adversarial process, it's an inquisitorial process. And in the Thompson case I cited, says the special duty assigned to the ALJ requires essentially a record which shows that the claimant was not prejudiced by lack of counsel. And quite frankly, if I'd have done this at the administrative level, this vocational testimony would have had so many pieces there wouldn't have been much of it left by the time I got done. And it's their burden. It's not our burden. It's their burden. So thank you, Your Honors. Appreciate it. All right. Thanks to both counsel in that case. The court will take the case under advisement.